# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

KENNETH TELFAIR NEWSOME II,  )
                                )
        Movant,             )
                                )
v.                              )   Case No.    CV408-004
                                )                 CR404-309
UNITED STATES OF AMERICA,   )
                                )
        Respondent.     )

## REPORT AND RECOMMENDATION

Three days after this Court entered a Report and Recommendation ("R&R") recommending that Kenneth Newsome's 28 U.S.C. § 2255 motion be denied, he filed a supporting brief that added substantial factual and legal support for his claims. (Docs. 18, 20.)[1] Based upon that filing, the district judge rejected the R&R and re-referred the case back to this Court for further consideration. (Doc. 23.) For the following reasons, Newsome's § 2255 motion should be **DENIED**.

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV408-004. "Cr. Doc." refers to documents filed under movant's criminal case, CR404-309.

# I.  BACKGROUND

On August 19, 2004, Newsome, a convicted felon, was arrested as a suspect in the non-fatal shooting of his wife and fifteen-month-old son, which had occurred a few days earlier.[2]  *United States v. Newsome*, 475 F.3d 1221, 1222 (11th Cir. 2007).  A grand jury indicted Newsome on one count of unlawful possession of a firearm by a convicted felon.  (Cr. Doc. 1.) The indictment was twice superseded. (Cr. Docs. 28 & 37.)  The third and final indictment mirrored the first, charging Newsome with a single count of unlawful possession of a firearm by a convicted felon.  (Cr. Doc. 37.)  A jury found Newsome guilty, and he was sentenced to 120 months' imprisonment.  (Cr. docs. 58 & 68), *aff'd Newsome*, 475 F.3d at 1227-28.

Newsome challenges his conviction and sentence, alleging that:

(1)  his counsel was ineffective for failing to adequately consult with him, investigate the facts, and present his requested defense;

(2)  the conviction was obtained by the unconstitutional failure of the prosecution to disclose evidence favorable to the defendant;

---

[2]  Newsome was convicted in state court for aggravated stalking, cruelty to a child, possession of a firearm during the commission of a felony, and two counts of aggravated assault.  *Newsome v. State*, 289 Ga. App. 590, 590-91 (2008).

(3)    the conviction was obtained by the use of perjured testimony;
       and

(4)    the conviction was obtained by the use of evidence gained
       pursuant to an unconstitutional search and seizure and a
       *Miranda* violation.

(*Id.* at 5-6.)

## II.    ANALYSIS

### A.    Ineffective Assistance of Counsel

Newsome raises three claims of ineffective assistance of counsel.
(Doc. 1 at 4.)   In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the
Supreme Court created a two-part test for determining whether counsel's
assistance was ineffective.   First, the movant must demonstrate that his
attorney's performance was deficient, which requires a showing that
"counsel made errors so serious that counsel was not functioning as the
'counsel' guaranteed by the Sixth Amendment."   *Id.*   Second, he must
demonstrate that the defective performance prejudiced the defense to
such a degree that the results of the trial cannot be trusted.   *Id.*

Under the performance prong, the reasonableness of an attorney's
performance is to be evaluated from counsel's perspective at the time of
the alleged error and in light of all the circumstances.   *Id.* at 690.   The

movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, the movant must show that "'no competent counsel would have taken the action that his counsel did take.'" *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).

Under the prejudice prong, the movant must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

The same *Strickland* test applies to claims of ineffective assistance of appellate counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Smith*

4

*v. Murray*, 477 U.S. 527, 535-36 (1986). In *Jones v. Barnes*, 463 U.S. 745 (1983), however, the Supreme Court held that the Sixth Amendment does not require appellate advocates to raise every nonfrivolous issue. Effective appellate counsel should "'winnow out' weaker arguments even though the weaker arguments may be meritorious." *Id.* at 751-52. Appellate counsel has no duty to assert every potentially colorable claim of error, even if his client urges him to do so, but instead should exercise his professional judgment and select only "the most promising issues for review." *Id.*

### 1. *Failure to Consult*

Newsome first alleges that his lawyer "failed to adequately and sufficiently consult with [him]." (Doc. 20 at 7.) He states that he "continuously made numerous efforts to consult with counsel appointed to his case in a[n] effort to discuss issues in regards to his case," but "counsel was more focused on him pleading out than to consult with [him] in a[n] effort to adequately prepare his defense." (*Id.* at 7-8.) He also states that his counsel "failed to adequately consult with [him]" on

appeal and that counsel's "[f]ailure to raise meritorious appellate argument constitutes ineffective assistance."[3]   (*Id.* at 8.)

Newsome offers little in support of his claim, however.   For instance, he does not indicate how many times he met with or otherwise corresponded with counsel or the length of time spent in those meetings. He does not explain which appellate argument he believes would have been meritorious.   Moreover, he has not indicated how the alleged failure in consultation prejudiced him at trial or on appeal.   His claim is simply self-serving and conclusory, thus supporting no § 2255 relief.   *See Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)); *see also United*

---

[3] Additionally, Newsome contends that he was "maliciously held in the solitary confinement unit" of the Chatham County Detention Center and "subjected to numerous constitutional violations," but "[c]ounsel failed to take adequate actions to correct the situation where as to allow Newsome an adequate opportunity to present his defense."  (Doc. 20 at 8.)  He does not specify what actions counsel should have taken, nor has he indicated that those actions could have succeeded.

Newsome suggests that his time in solitary could be interpreted as government interference with his right to counsel, citing *Geders v. United States*, 425 U.S. 80 (1976).  (Doc. 20 at 7-8.)  The trial judge in that case committed reversible error by prohibiting counsel from speaking with his client during a 17-hour overnight recess. *Geders*, 425 U.S. at 91.  Here, Newsome does not allege that he was prohibited from interacting with counsel and in fact admits that he was able to contact counsel to complain about the conditions of his confinement.  (Doc. 20 at 8.)  *Geders* simply does not apply on these facts, as Newsome's right to effective assistance of counsel was not abridged.

States v. Laetividal-Gonzalez, 939 F.2d 1455, 1465 (11th Cir. 1991) (no hearing required where movant's allegations fail to satisfy the prejudice prong of the Strickland test); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (no hearing required on claims "which are based on unsupported generalizations"); *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir. 1973) (no hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations).[4]

## 2. *Failure to Investigate*

Newsome contends that he was framed by Saladean Mullgrav and that his attorney failed to properly investigate that defense. (Doc. 1 at 1-4, 8.) He provides the following narrative:

> For several months prior to [his divorce from April Worthy and] the shooting [of Worthy and his son Malik on August 16, 2004], Newsome and his family had received numerous threats and harassment from Saladean Mullgrav. Mullgrav was in a previous relationship with [Worthy] . . . and fathered a child with her which the relationship contained domestic violence. During that period of time Mullgrav was a member of the [Savannah Chatham Metropolitan Police Department] of which he was led to resign in

---

[4] *Rodriguez* is binding Eleventh Circuit authority. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981).

lieu of termination for his unethical actions which included violence against a female citizen.

At the time of the shooting, Mullgrav was employed with the Garden City Police Department. Newsome immediately sought help by filing numerous reports in regards to Officer Mullgrav's continuous threats and harassment, in which Mullgrav emphasized his ability and intent to "get rid of" Newsome either by physical harm or causing him to be "put in prison." In addition to filing the police reports, Newsome and his family were instructed to pursue criminal and civil actions against Mullgrav. Newsome did as instructed. . . . Worth[y], now Newsome's ex-wife, . . . was receiving threats from Mullgrav in which Mullgrav made clear to her if she went forward with such legal actions, he would "take care of her" also. Because of her fears and experience with Mullgrav[']s violent and vindictive behavior, Worthy discontinued her pursuance in furthering legal actions.

Newsome was further legally advised to continue his efforts of pursuing legal actions against Mullgrav and that it would be recommended that he file divorce from Worthy in which he did. . . . With Worthy having knowledge of such, Worthy then filed for divorce under false pretenses and also filed for a Temporary Restraining Order [("TRO")], in which Worthy falsely accused Newsome of domestic violence (a effort to have Newsome removed from their home). A hearing was scheduled in which Newsome was prepared to present evidence of Worthy's false accusations and the threats made by Mullgrav. Prior to such hearing, on August 19, 2004, Newsome was arrested and falsely accused of the incident that took place on August 16, 2004. . . . Newsome was arrested at the Villager Lodge, where he was staying due to the unethically obtained TRO. . . . Numerous police officers were at the scene of the arrest and Newsome also appeared to have seen Mullgrav in the background of the many others. Newsome firmly states that at the place of arrest, he did not possess a weapon and Newsome did not own or posses a weapon during any time of such events.

(*Id.* at 1-4 (citations omitted).)[5]   Presenting no evidence and making no direct accusations, Newsome implies that Mullgrav and Worthy (under threat from Mullgrav) conspired to charge him with possession of a firearm.   In addition, Newsome states that he had an alibi on the day of the shooting:

> Newsome had rented a vehicle to travel to nearby Brunswick, Georgia [on August 16th] in search of an attorney, of which he was recommended to do.   Before Newsome's departure, Newsome's rental vehicle experienced mechanical mal-function and was involved in a "small" accident.   Newsome contacted the rental office and informed them of the situation and condition of the vehicle.

(*Id.* at 3.)

Based upon his version of the events, Newsome argues that counsel was ineffective for failing to investigate: "(1) The totality of the conflict between Newsome, and Mullgrav, which stemmed from the threats Mullgrav made toward Newsome and his family, (2) The false accusations made by Worthy against Newsome regarding the alleged acts of [domestic] violence prior to the August 16, 2004 incident[,] (3)

---

[5] Newsome raised similar claims in a 42 U.S.C. § 1983 action.   *See Newsome v. Smith*, No. CV407-136 (S.D. Ga. Nov. 13, 2007).

Forensic/scientific evaluation of the weapon (fingerprinting of the weapon); and [(4)] the total defense of the case." (*Id.* at 9.)

All of these arguments fail to meet Newsome's IAC burden. As for "the totality of the conflict" with Mullgrav, Newsome has neither pointed to any specific evidence his counsel failed to uncover nor explained exactly how such evidence would have proved his innocence.[6] (*Id.*) Skipping ahead to his fourth ground, "the total defense of the case," Newsome has similarly failed to particularize the alleged errors. The first and fourth grounds are overly-general, and thus support no § 2255 relief. *See Caderno*, 256 F.3d at 1217.[7]

---

[6] In Newsome's motion for new trial before this Court, he submitted Mullgrav's rather abysmal police department disciplinary records along with a police report reflecting that Newsome had accused Mullgrav of making harassing phone calls. (Cr. doc. 78 at 10-12, 35-43.) Newsome also submitted Georgia Department of Children and Family Services records showing that there indeed was a conflict between the two men over Mullgrav's visitation with his daughter. (*Id.* at 23-27.) Such a conflict, standing alone, simply cannot overcome the eye-witness testimony of his wife and the arresting officers regarding his possession of a firearm. As noted by the district judge on motion for new trial, "none of [that] evidence would likely produce a different result." (Cr. doc. 81 at 2.)

[7] Despite his lack of specificity, it is clear that counsel exerted every effort to locate evidence favorable to Newsome. He subpoenaed two witnesses to bring records relating to the Mullgrav conflict: Assistant District Attorney Nancy Smith and Officer Andre Jackson of the Savannah-Chatham Metropolitan Police Department. (Cr. doc. 73 at 8-11.) They were asked to produce tape recordings of conversations between Newsome and Mullgrav, which Newsome apparently insisted existed. (*Id.*) Neither witness could locate any such recordings nor any record of

Newsome's second enumerated error -- regarding his supposed history of domestic violence -- also fails. Quite simply, Worthy never offered any such testimony at trial. At prompting from the government, she admitted that she had marital problems and the relationship was "stormy." (Cr. Doc. 73 at 40.) Indeed, during the opening statement, the government simply stated "[u]nfortunately the marriage was not -- it was stormy, I guess would be the best way to put it." (*Id.* at 28.) In the face of such a mild statement, defense counsel wisely steered clear of the domestic violence issue, since it would have been highly prejudicial to Newsome's defense. (*Id.* at 45-46.)

Finally, counsel had no reason to fingerprint the pistol. After all, one of the lynchpins of Newsome's defense was the government's failure

---

such recordings. (*Id.*)

Moreover, Newsome is bound to admit that Mullgrav and Worthy would not testify as to his version of the events at trial (doc. 20 at 2), which leaves Newsome as the lone source of evidence. Counsel called Newsome to the stand, and Newsome testified about the conflict, explaining that Mullgrav inserted himself into the marriage in order to obtain visitation rights with his daughter. (Cr. doc. 74 at 119-120.) Mullgrav's harassment caused the marriage to founder, Newsome was kicked out of his house, and he was told by his divorce attorney that the only way he could see his son would be to obtain a divorce from Worthy. (*Id.* at 120-123, 143-44.) Newsome stated that Mullgrav followed him regularly and implied that Mullgrav planted the weapon underlying the offense. (*Id.* at 135, 142.)

to do so.[8]  (*Id.* at 79 & recorded closing argument.)   Moreover, the forensics officer that located the weapon stated that he did not fingerprint it because "there was no question of who was in possession of the firearm at the time" it was recovered, and forensic specialists have "[v]ery little success recovering prints of value on weapons . . . [because] the finish of the weapon, the types of oils that get on the firearms, as well as from usage." (*Id.* at 77.)   Indeed, the pistol in question "appear[ed] to be an older firearm, which is difficult.   They build up a lot of residue." (*Id.*) Newsome has not offered any evidence in rebuttal.

Based upon the record, counsel simply did not perform deficiently in failing to adequately investigate the case.   Moreover, Newsome has not shown that any such failure prejudiced him.   The evidence against him was overwhelming.   The police found shell casings at the scene that positively corresponded to the gun later found in his hotel room, and Worthy positively identified him at trial as the man who shot her.   (The district judge actually prohibited any references to the fact that she and

---

[8] It is worth noting that the backpack that held the firearm contained plastic gloves, which could have been used to prevent the application of fingerprints to the firearm.   (Cr. doc. 73 at 74.)

her son were shot, but she testified as to his presence at the scene carrying a pistol). Newsome, however, has not proffered any evidence that directly supports his version of the events. Even if the recently produced Mullgrav reports slightly bolster Newsome's testimony, a jury would still find that testimony unpersuasive, faced with such significant evidence against him.[9]

### 3.  *Failure to Present Requested Defense*

In Newsome's final iteration of ineffective assistance, he states that counsel failed to present his requested defense: "(1) That someone other than defendant committed the offense (Mullgrav and the mysterious Damien Johnson - whose identification was allegedly found near where the weapon was suppose[dly] found)[;] (2) Newsome's alibi defense which would have made it impossible for him to have commit the underlying offenses – the root of the federal charge[;] and (3) The motive of Worthy

---

[9] Absent some evidence to the contrary, Newsome's version of the events is simply not credible. Why would Worthy allow Mullgrav to have her *and her child* shot in order to put Newsome in jail, when Mullgrav could have just as easily planted a firearm and called the police? Moreover, how did Mullgrav manage to coerce Worthy, all of the arresting police officers, the district attorney, and the car rental manager to testify falsely?

(primary government witness) and Mullgrav to conspire to have Newsome imprisoned." (Doc. 1 at 10.)

This claim is unfounded. Newsome testified on his own behalf and explained his suspicions as to Mullgrav to the jury. (Cr. doc. 139-146.) And as discussed above, absent any credible factual support (other than his self-serving assertion of innocence), he simply cannot show that counsel's decision not to pursue this unsubstantiated and incredible line of defense was prejudicial.

## B. Withholding of Evidence

In ground 2 of his § 2255 motion Newsome contends that his conviction must be invalidated because the prosecution unconstitutionally withheld evidence. (Doc. 1 at 4.) He did not raise this claim on appeal. "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting the claim in a § 2255 proceeding."[10] *Lynn v. United States*, 365 F.3d

---

[10] Although Newsome's ineffective assistance of counsel claims were not raised on appeal, they are not procedurally barred. Because of the unique aspect of such claims, "an ineffective assistance of counsel claim may be brought in a collateral proceeding under § 2255, whether or not the movant could have raised the claim on

14

1225, 1234 (11th Cir. 2004). Consequently, the ground is procedurally barred unless Newsome can establish cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error. *Lynn*, 365 F.3d at 1234 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).[11]

Newsome alleges that he did not present this ground to the Eleventh Circuit because his appellate counsel was ineffective. (Doc. 1 at 6.) "[C]onstitutionally '[i]neffective assistance of counsel . . . is cause" for excusing a procedural default. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citations omitted). Accordingly, if the Court finds that counsel

---

direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

[11] In addition to cause and prejudice, a procedural default may be excused on the grounds of actual innocence. *Lynn*, 365 F.3d at 1234. Newsome has consistently argued that he is innocent of the crimes for which he was convicted. The actual innocence standard is exceedingly narrow, however. "To meet this standard, a movant must show that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Actual innocence refers to factual innocence, not mere legal insufficiency. *Bousley*, 523 U.S. at 623-24. The Supreme Court has indicated that a movant must present "new reliable evidence" establishing that "it is more likely than not that no reasonable juror would have found [movant] guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Newsome has attempted to present "new" evidence (most of which is referenced in his motion for new trial), but none of it comes close to showing that "no reasonable jury would have found [him] guilty beyond a reasonable doubt." Consequently, he cannot excuse his procedural defaults on this ground.

performed ineffectively in failing to raise ground 2, it must next determine if counsel's error prejudiced his defense.

Newsome alleges that the government failed to provide: (1) "investigative reports and documentation evidencing Mullgrav's law enforcement" record; (2) "police reports filed against Mullgrav by Newsome;" (3) investigation report on potential suspect Damien Johnson - whose ID was later found in Villager Lodge;" and (4) fingerprint evidence of the weapons and shell casings. (Doc. 20 at 12.)

Newsome provided the reports relating to Mullgrav in his motion for new trial. (Cr. doc. 78.) While Mullgrav had a questionable record as a police officer and had custody issues with Worthy regarding their daughter, the district judge properly found that "none of [that] evidence would likely produce a different result [at trial]." (Cr. doc. 81 at 2.) As to the "mysterious" Damien Johnson, ATF Agent Kaufman testified that she attempted to track him down but was unsuccessful. (Cr. doc. 73 at 87.) Two other officers testified at trial that they did not conduct a formal investigation of Damien Johnson, as he was never targeted as a suspect. (*Id.* at 65, 78.) Newsome does not indicate how the inconclusive Johnson "report" was likely to help him or would have

changed the outcome of the proceedings. And, as noted above, the police officers never fingerprinted the shell casings or firearm, so there was nothing to provide in that regard. Again, these are red herrings.

Based upon the substantial evidence against Newsome, there is no reasonable probability that the requested disclosures would have impacted the outcome of his case. *See Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995) (when the government fails to disclose evidence the question is "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence," i.e., there must be a "reasonable probability" that disclosure of the evidence suppressed by the government would have led to a different result). Consequently, the procedural default of this ground should not be excused.

## C.    Perjured Testimony

In another procedurally defaulted claim (as it was not raised before the Eleventh Circuit), Newsome contends that several trial witnesses offered perjured testimony. (Doc. 20 at 12-16.) Newsome first points to the "contradictory" testimony of Detective Villegas and Officer Hurley

pertaining to their discovery of the pistol in a bag in his hotel room at the time of his arrest. Villegas testified at the suppression hearing that Newsome told him the gun was in a bag and stated that he did not search the bag, but brought in forensics to check the gun. (Cr. doc. 23 at 11-12, 25.) Officer Hurley testified at trial that he *opened* the bag but also did not search the bag; instead, responding officers called in forensics. (Cr. doc. 73 at 58.) Newsome contends that there is a conflict as to when the bag was actually opened and that conflict shows that Hurley's testimony at trial was perjured.[12] Next, Newsome insists that Officer Jackson and ADA Smith perjured themselves when they denied existence of any Mullgrav/Newsome tape recordings in their records. *See* note 6 *supra* (discussing Smith and Jackson subpoenas on Mullgrav issue). In support of his claim, he submitted a single police report showing that he had reported Mullgrav for making harassing calls in violation of a court

---

[12] The Eleventh Circuit considered this testimony on appeal and found in dicta that "contrary to the assertion by Newsome, Villegas's testimony regarding when the bag was opened is not inconsistent with Hurley's testimony on the same subject." *Newsome*, 475 F.3d at 1226. But even if there were an inconsistency, it does not show perjury on the part of the officers. It is not unusual for witnesses to misremember the fine details of such encounters.

order; he believes the existence of that record proves their complicity.[13] (Cr. doc. 78 at 10-12.) Finally, Newsome contends that Worthy knowingly offered false evidence under threat from Mullgrav.[14] (Doc. 20 at 16-17.)

None of the allegations come close to showing that the witnesses intentionally lied on the stand. And even if all of the witnesses knowingly provided false testimony, Newsome's claim fails as a matter of law. "'Not every use of false evidence [at trial] entitles a defendant to [relief].'" *Tejada*, 941 F.2d at 1556 (citing *Giglio v. United States*, 405 U.S. 150 (1972)). To be entitled to relief, the *government* must have *knowingly* used false evidence and that evidence must have been material. *Id.* (emphasis added); *Jacobs v. Singletary*, 952 F.2d 1282, 1287 n.3 (11th Cir. 1992) ("We have previously ruled that only knowing use of perjured testimony constitutes a due process violation.").

---

[13] As noted above, however, Newsome's counsel asked Smith and Jackson about a *tape recorded* conversation between Newsome and Mullgrav. (Cr. doc. 73 at 8-11.) The police report does not prove that the tapes were ever in existence or that they were still available at the time of Newsome's trial.

[14] Newsome also denies that he had any history of violence towards Worthy. (Doc. 20 at 17.) As mentioned above, Worthy simply stated that their relationship could be described as "stormy."

Newsome has not come close to showing that the government knowingly introduced false testimony at trial. Since the claim itself is without merit, Newsome has not shown that counsel performed deficiently by failing to raise it or that any deficient performance acted to prejudice him. *Strickland*, 466 U.S. at 687. As he has not shown that counsel was ineffective, he is not entitled to relief on this procedurally defaulted ground for relief.

### C.    Motion to Suppress

In ground 4, Newsome alleges that his conviction was obtained by the use of evidence gained in violation of the Fourth and Fifth Amendments. (Doc. 1 at 6.) Specifically, he contends that the search of the motel room where he was arrested and the seizure of the firearm underlying his conviction violated his Fourth Amendment rights. (*Id.*) He also alleges that the one of the arresting officers asked if there was "anything or anyone in the room that I should know about" before advising him of his *Miranda* rights. (*Id.*)

As this Court and the Eleventh Circuit have previously held, the arresting officer's question was proper under the public safety exception to *Miranda* and the search and seizure were proper under the exigent

circumstances exception to Fourth Amendment's warrant requirement. *Newsome*, 475 F.3d at 1224-27; cr. doc. 18. Moreover, absent extraordinary circumstances, he cannot relitigate that claim here, since it was raised and rejected on direct appeal. *Davis v. United States*, 417 U.S. 333, 342 (1974); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Marshek v. United States*, 2006 WL 2036996, at *7 (S.D. Ga. July 18, 2006). Since Newsome does not allege any "extraordinary circumstances" justifying reconsideration of issues previously considered and rejected by the Eleventh Circuit, this claim fails.[15]

## III. <u>CONCLUSION</u>

For the foregoing reasons, Newsome's § 2255 motion (doc. 1) should be **DENIED**. Since the motion is without merit, his motion for a hearing (doc. 16) should also be **DENIED**.

---

[15] Newsome states that there are extraordinary circumstances supporting reanalysis, since he did not possess the weapon, he did not tell the officers that he possessed a weapon, and he was not read his *Miranda* rights. (Doc. 20 at 18.) In other words, he asserts that exactly the same facts he has attested to throughout his trial and appeal justify a third bite at the apple. Those are not the type of "extraordinary circumstances" required to warrant further review. Movants must show something drastic, such as an intervening change in the law. *See Wilson v. United States*, 2006 WL 2949351 at *1 (S.D. Ga. Oct. 16, 2006).

**SO REPORTED AND RECOMMENDED** this  1st  day of July, 2009.

 /s/ G.R. SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA